IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:04-CR-305-F-3
No. 5:08-CV-75-F

| | |
|---|---|
| LARRY EDWARD THOMPSON, JR.,<br>Petitioner, | )<br>)<br>) |
| v. | )     ORDER<br>) |
| UNITED STATES OF AMERICA,<br>Respondent. | )<br>)<br>) |

This matter is before the court on the Government's Motion to Dismiss or for Summary Judgment [DE-105] as to Larry Edward Thompson's ("Thompson") Motion [DE-96] to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255.[1] Thompson has filed a Response [DE-108] in opposition to the Government's Motion, as well as his own Motion for Summary Judgment [DE-110]. The matter is ripe for disposition.

I. PROCEDURAL BACKGROUND

On January 3, 2005, Thompson pled guilty pursuant to a Plea Agreement [DE-47] to conspiring to distribute and possess with the intent to distribute more than 50 grams of cocaine base (crack) and more than 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846. Although the advisory[2] United States Sentencing Guideline ("U.S.S.G.") range was 168 to 210 months imprisonment, this court allowed the Government's motion for a downward departure and sentenced Thompson below that range to 138 months imprisonment on April 12, 2005. [DE-61].

---

[1] Thompson's § 2255 motion also contains a "Motion for Discovery." [DE-96.1]

[2] *United States v. Booker*, 543 U.S. 220 (2005) was announced on January 12, 2005 – after Thompson entered his guilty plea, but before he was sentenced. *Booker*, therefore, applies to Thompson's sentencing.

Thompson's direct appeal was dismissed as untimely, and his petition for rehearing en banc was denied. [DE-93, -95]. He did not petition the Supreme Court for a writ of certiorari. On February 28, 2008, Thompson filed this timely § 2255 petition. In an order [DE-99] filed on March 21, 2008, this court dismissed four of Thompson's five claims for relief and directed the Government to respond to Thompson's remaining claim that counsel failed to disclose a conflict of interest. The Government filed the instant motion [DE-105] on May 30, 2008. Thompson filed his Response [DE-108], and his own Motion for Summary Judgment [DE-110][3] on June 27, 2008.

## II. FACTUAL BASIS

Pursuant to this court's March 21, 2008, order, the sole remaining claim for consideration is that trial counsel rendered ineffective assistance by failing to disclose an actual conflict of interest. Specifically, Thompson claims that his retained counsel, Ms. Godwin, concurrently represented both him and Kenneth Richardson ("Richardson"), whom Thompson describes as the Government's "main informant" against him. Thompson contends that he was prejudiced by this actual conflict of interest because Ms. Godwin urged him to plead guilty then prevented him from providing information against Richardson, the result of which was that Thompson did not receive a further sentence reduction.

### A. Thompson's Case

The record herein demonstrates that Thompson was arrested on September 3, 2004, after he attempted to make a *hand-to-hand sale* of crack cocaine to an *undercover police officer*. Thompson immediately cooperated with the police and, in an unprotected statement, admitted that he had just "cooked up" the crack. Officers seized 140.6 grams of crack and a set of scales from Thompson's vehicle; a consensual search of Thompson's residence produced an

---

[3] Thompson failed to support his Motion for Summary Judgment with a memorandum, as required by Local Civil Rules 7.1(d), 7.2.

additional small quantity of controlled substances and some drug paraphernalia. Thompson's arrest was part of an ongoing investigation by the Raleigh Police Department nicknamed "Operation Eastforce."

A federal criminal Complaint [DE-3] was filed against Thompson on September 4, 2004. Thompson's attorney, Ms. Rosemary Godwin, filed her Notice of Appearance [DE-21] on September 15, 2004 – prior to Thompson's indictment [DE-27] on September 22, 2004. Ms. Godwin was successful in obtaining Thompson's pretrial release between September 24, 2004, and the date of sentencing, January 3, 2005. At sentencing, the highlights of Thompson's substantial assistance to the Government were detailed, both the Government and Thompson's attorney argued for a sentence below the U.S.S.G. advisory Guideline range, and Thompson exercised his right to allocution. The court allowed the Government's U.S.S.G. § 5K1.1 motion for downward departure and sentenced Thompson to a term of 138 months, below his advisory Guideline Range of 168-210 months.

**B. Richardson's Case**

About a month after Thompson entered his guilty plea, Ms. Godwin appeared on behalf of Kenneth Eugene Richardson in a facially unrelated case, No. 5:05-CR-29-1-F, prosecuted by the same Assistant United States Attorney. Richardson also was charged with a drug trafficking conspiracy investigated by the Raleigh Police Department, but not as part of "Operation Eastforce." Richardson pled guilty to a Criminal Information on February 22, 2005. Counsel was successful in obtaining Richardson's pre-sentence release on an unsecured bond.

Like Thompson, Richardson cooperated with the Government and received a motion for downward departure for substantial assistance to the Government under U.S.S.G. § 5K1.1. and 18 U.S.C. § 3553(e). From an advisory U.S.S.G. range of 151-188 months, the court departed downwardly and sentenced Richardson to a term of five years probation. The transcript of Richardson's sentencing hearing reflects the extraordinary breadth and depth of his remarkable

3

assistance to the Government, which included, inter alia, valuable information about Antonio Tomlinson and Shondu Dawson (Thompson's co-defendants), and others.

## C. Thompson's Affidavit

In response to the Government's Motion for Summary Judgment [DE-105] to which Ms. Godwin's affidavit was appended, Thompson filed another Affidavit [DE- 109] stating under oath the grounds upon which he bases his contention that his counsel had an actual conflict of interest during her representation of him.[4] In this Affidavit, Thompson contends that he specifically instructed Ms. Godwin to "review the discovery reports and other documentation and inquire whether Mr. Richardson was a confidential informant of the case." Thompson Affidavit [DE-109] at ¶ 1. Additionally, he avers that after reviewing discovery in his case, he "became aware that counsel was representing the confidential informant approximately 33 days after I had entered my change of plea." *Id.* at ¶ 3. It is Thompson's position that the discovery in his case revealed that Richardson was the confidential informant who provided information against him to the police all along, and that such discovery refutes counsel's statement in her affidavit that "Mr. Richardson was not a confidential informant against" Thompson. *Id.* at ¶ 8, quoting Godwin Affidavit at ¶ 8.

Thompson relies on two documents to support his position. First, he offers the Affidavit of co-defendant Antonio Tomlinson, *see* [DE-96], Exhibit "16." Tomlinson's Affidavit, notarized on August 21, 2007, explains how he knew that Richardson had "set him up," and therefore was the confidential informant upon whose cooperation the police obtained the Tomlinson/Dawson/Thompson indictment. The record supports the suggestion that

---

[4] Thompson's Affidavit filed in support of and contemporaneously with his § 2255 motion does not contain allegations of conflict of interest or facts that would support such allegations. The initial affidavit complains that Ms. Godwin did not adequately advise him concerning the operation of the U.S.S.G., specifically how he would be affected by relevant conduct.

4

Richardson provided information to police concerning Tomlinson's and Dawson's drug dealing, and may have been instrumental in the Government's obtaining an indictment against them. Although Thompson was a named co-conspirator in that same indictment, there is no suggestion in Tomlinson's affidavit that Richardson supplied any information leading to Thompson's being so named.

Thompson also refers to "the Government's discovery," but points only to an undated Supplementary Report of a July 7, 2004, Raleigh Police Department interview of Kenneth Richardson. Near the end of the report, Officer Scully wrote,

> Richardson has another associate by the name of "Wop." This subject has been identified as Shondu Dawson. Richardson stated that Dawson gets his cocaine from a subject by the name of "L" -- possibly ex-military. Richardson has never seen this "L" subject.

Investigative Report, Exhibit E to [DE-96]. The interviewing officer speculated that the subject, " 'L' possibly [was] Larry E. Thompson." [5] *Id.* Whether this report of *Richardson's* debriefing was part of discovery produced to the defense in *Thompson's* case is not clear, but for purposes of the instant motion, the court assumes it was.

### D. Ms. Godwin's Affidavit

In support of the Government's Motion for Summary Judgment, Ms. Godwin prepared an affidavit concerning her representation of Thompson and the allegations Thompson set forth in his § 2255 petition and attachments thereto. She explains that she was hired to represent Thompson by his mother and step-father.[6] Godwin Affidavit, Exhibit A to [DE-106], at ¶ 3. She

---

[5] Further investigation convinced the officers that Thompson did not supply cocaine to Dawson, and that Thompson was not "L."

[6] Thompson's documentation supporting his petition contains letters, affidavits and emails from his family complaining of Ms. Godwin's lack of communication with them and her failure to keep them apprised of the particulars of Thompson's case. In fact, an attorney is prohibited from engaging in such communications with persons who pay her client's legal fees;

5

relates that during her first meeting with Thompson after his arrest when he attempted to sell cocaine to an undercover police officer at a pre-arranged delivery location, Thompson told her he had been "set up" by a female. Ms. Godwin's review of the police reports confirmed that a woman had arranged the drug purchase with Thompson by telephone at the direction of police officers. *Id.* at ¶ 4. Upon his arrest, Thompson immediately cooperated with police and supplied information in unprotected statements concerning his knowledge of drug activities and participants therein.

Ms. Godwin further explains that she met with Thompson on a number of occasions, and generally was present when Thompson met with police to proffer additional information he had concerning drug activities. *See id.* at ¶¶ 3, 6, 7. As far as she knew, Thompson did not name Richardson, and she had no reason to believe Thompson and Richardson ever engaged in drug-related activity. *See id.* at ¶ 7. The case agents assured her that Richardson was neither the confidential informant nor a potential witness against Thompson. *See id.* at. ¶ 8. Ms. Godwin relates that agents told her their investigation revealed Thompson did not supply drugs to his co-defendant, Dawson, but, rather, worked for Dawson as a driver. Ms. Godwin avers that she had no idea that Thompson even knew Richardson.

### III. ANALYSIS

In order to establish ineffective assistance of counsel in a conflict of interest situation, a defendant " 'must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.' " *Rubin v. Gee*, 292 F.3d 396, 401 (4th Cir.) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980)), *cert. denied*, 537 U.S. 1048 (2002). An adverse effect may not be presumed from the mere existence of a conflict of interest. *See Mickens v. Taylor*, 535 U.S. 162

---

she is prohibited by the attorney-client privilege from disclosing to third parties communications between herself and her client. *See, e.g., United States v. Lentz*, 524 F.3d 501, 523 (4th Cir.), *cert. denied*, 129 S. Ct. 303 (2008). Absent explicit instruction by Thompson to the contrary, Ms. Godwin was not free to discuss the particulars of his case with his family members.

6

(2002). To demonstrate an "actual conflict," Thompson "must show that [his] interests 'diverge[d] [from his attorney's] with respect to a material factual or legal issue or to a course of action.' " *Jones v. Polk*, 401 F.3d 257, 267 (4th Cir. 2005). If Thompson can demonstrate an actual conflict, he next must show that he was adversely affected thereby, such as " 'when an attorney takes action for one client that is necessarily adverse to another, or when the attorney fails to take action for one client for fear of injuring another.' " *Stephens v. Branker*, 570 F.3d 198, 209 (4th Cir. 2009) (quoting *Polk*, 401 F.3d at 267).

Here, Thompson attempts to establish an "actual conflict" by alleging that his interests [in avoiding a conviction] diverged from those of Ms. Godwin's [to protect Richardson] with respect to a course of action [whether Thompson would plead guilty or go to trial]. Even if Thompson were able to demonstrate such an "actual conflict," [7] he cannot prove he suffered an "adverse effect" *because of* such conflict.

The Fourth Circuit Court of Appeals recently reiterated a petitioner's burden to show that he suffered an "adverse effect" from his counsel's alleged actual conflict of interest. To establish an adverse effect, he

> must satisfy a three-part test: First, the petitioner must identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued. Second, the petitioner must show that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at

---

[7] The court does not find that an actual conflict existed. Ms. Godwin unequivocally has stated that she was unaware that Richardson had dealt with Thompson, which belief is fully consistent with the police officers' conclusion that Thompson's role was that of Dawson's driver and not Richardson's source of drugs. *Cf. United States v. Leon-Lopez*, 891 F. Supp. 138, 148 (S.D.N.Y. 1995) (concluding that the attorney representing drug-distribution defendant did not have conflict of interest resulting from previous representation of another defendant on charges arising from same investigation resulting in charges against defendant here; defendants were charged in different indictments, earlier defendant did not testify against current defendant, and there was no evidence that defendants knew each other), *aff'd*, 101 F.3d 109 (2d Cir. 1996) (UP). Of course, if the investigating officers and his lawyer were mistaken, then Thompson himself could have brought his connection with Richardson to Ms. Godwin's attention. He was in the best position to know.

7

> the time of the attorney's tactical decision. . . . Finally, the petitioner must
> establish that the defense counsel's failure to pursue that strategy or tactic was
> linked to the actual conflict.

*United States v. Stitt*, 552 F.3d 345, 350 (4th Cir. 2008), *cert. denied*, 130 S. Ct. 65 (2009) (citing *Mickens*, 240 F.3d at 361). Underlying the most basic notion of a "conflict of interest" is the assumption that the lawyer was aware of facts that created the purported situation. *See, e.g., United States v. Gantt*, 140 F.3d 249, 254 (D.C. Cir. 1998) (holding that no actual conflict of interest existed with regard to defense counsel's simultaneous representation of defendant and a witness questioned about defendant's case where counsel did not know, during his representation of defendant, that prosecutors had questioned the witness about defendant's case). Thompson's suggestion that Ms. Godwin was or should have been aware that a conflict existed is supported only by his reference to the Tomlinson affidavit, which does not mention Thompson, and the Richardson interview report in which the interviewing officer's speculation that "L" might be Thompson turned out to be incorrect.

Thompson chides Ms. Godwin for failing to investigate thoroughly enough to discover a connection between himself and Richardson, but points to no evidence that should have brought to her attention some grounds for a conflict of interest. The only connection between Thompson and Richardson appears to have been their respective relationships with Tomlinson and Dawson; they did not deal with each other. Although Thompson is convinced that Richardson was "the confidential informant" in his case, all indications are to the contrary, including his own statement that a female set him up. Thompson's "conflict" concerns may, in fact, result from his *own* knowledge of a direct relationship between himself and Richardson which Thompson never disclosed, and of which neither the Government nor Ms. Godwin ever became aware.

8

Case 5:04-cr-00305-F    Document 121    Filed 12/07/2009    Page 8 of 12

Concerning her advice that Thompson accept the Government's plea offer to dismiss Count Two against him if he continued to cooperate and plead guilty to Count One, Ms. Godwin explains that given the circumstances under which Thompson was arrested – attempting a hand-to-hand sale of cocaine to undercover law enforcement officers in a sting operation – the plea option offered the best possible outcome for Thompson. Had Thompson gone to trial and been convicted of the charges in the Indictment, he would have been exposed to two life sentences. Ms. Godwin avers that she believed the chances of acquittal on a hand-to-hand sale to an undercover police officer were very small. She wisely urged Thompson to accept the plea offer and he wisely followed her advice. As a result, Thompson received a sentence *below* the Sentencing Guideline Range. *See Devaney v. United States*, 47 F. Supp. 2d 130, 133-34 (D. Mass. 1999) (finding that, where alleged conflict of interest was that counsel was beholden to a third party who paid defendant's attorney's fees, trial counsel was not ineffective for pursuing plea bargain rather than full defense on merits, considering that pursuit of alternative defense strategies such as a plea arrangement constituted highly appropriate professional conduct, that the mere fact that third party was paying fees did not constitute an actual conflict, and that defendant failed to show that conflict, even if actual, adversely affected counsel's performance, since, in addition to obtaining pre-trial dismissal on ten counts, counsel helped obtain acquittals on six counts at trial, and defendant's sentence was a downward departure from the low end of Guideline range), *aff'd*, 229 F.3d 1333 (1st Cir. 2000) (UP). Thompson's suggestion that Ms. Godwin's advice that he accept the Government's plea offer was based on a motivation to protect Richardson simply is grounded on sheer speculation that is belied by the record.

Furthermore, Thompson's own evidence undermines his allegation that Ms. Godwin would not allow him to continue to assist the Government after he was sentenced in order to protect Richardson. Thompson contends that her actions prevented him from receiving a motion for reduction of his sentence pursuant to Rule 35(b). In support of various of his

9

contentions, Thompson appended to his § 2255 motion a copy of a post-sentencing email from Ms. Godwin in response to repeated emails and telephone calls from his family. Her correspondence contained, *inter alia*, the following:

> I have continued to stay in contact with the police officers on Larry's case. I had a conversation with AUSA Kim Moore last week in which she informed me that their policy was not to file a Rule 35 downward departure motion for individuals that have appealed their pleas and sentencing. Larry has filed such an appeal when I had advised him not to do so.
>
> I am still trying to persuade the prosecutor to file a Rule 35 motion on his behalf, I do not know if she will be able to get approval for the motion. If she can, then Larry can get another downward departure.

Attachment D to Thompson's § 2255 motion [DE-96]. Indeed, the record reflects that Thompson filed a handwritten, pro se Notice of Appeal [DE-81] on October 12, 2005, which was dismissed by the Fourth Circuit Court of Appeals as untimely. *See United States v. Thompson*, No. 06-4089 (4th Cir. Dec. 12, 2006), *pet. for reh'g en banc denied* (4th Cir. Feb. 6, 2007).

Consistent with Ms. Godwin's advice and with this court's observations of the practices of the United States Attorney's Office in this district, a defendant who pursues an appeal of a sentence entered upon a plea of guilty will not be afforded an opportunity by the Government to earn a reduction in that sentence by providing post-sentencing substantial assistance. It is within the Government's prerogative to follow such a policy. Thompson was so advised by Ms. Godwin but he chose to ignore her advice, and did so at his own peril. Thompson was cut off by the Government from engaging in additional cooperation by virtue of his own conduct, not that of his trial counsel.

The court does not deem an evidentiary hearing to be necessary under the facts and circumstances presented by this case. The law does "not require direct factual support for each allegation a petitioner wishes to prove at a hearing. . . . Rather, . . . to obtain an evidentiary hearing, the petitioner must rely on more than merely plausible inferences that there is a factual basis for his claim for relief. *Polk*, 401 F.3d at 269, n.6; *see also Lenz v. Washington*, 444 F.3d

295, 304 (4th Cir. (an evidentiary hearing is not a fishing expedition for facts as yet unsuspected, but is instead "an instrument to test the truth of facts already alleged in the habeas petition"), *cert. denied*, 548 U.S. 928 (2006). Where, as here, a petitioner has not "allege[d] additional facts that, if true, would entitle him to relief," a hearing is unwarranted. *McCarver v. Lee*, 221 F.3d 583, 598 (4th Cir. 2000) (internal citation omitted) (affirming denial of an evidentiary hearing on an ineffective assistance claim), *cert. denied*, 531 U.S. 1089 (2001); *see also Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) (explaining that "in order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations beyond mere unsupported assertions") (internal citations omitted).

### III. SUMMARY AND CONCLUSION

Thompson has woven from shards of discovery information and his post hoc rationalizations a theory that his lawyer "gave him up" in order to benefit another client. The records in his case and Richardson's demonstrate that Thompson simply is wrong. Having carefully considered Thompson's motion, his memoranda and affidavits, the Government's motion and exhibits, together with the entire record herein, as well as this court's personal knowledge and recollection of the case, the court concludes that Thompson has failed to identify any genuine issue of material fact that, if proved, would entitle him to the relief he seeks.

Consequently, the Government's Motion for Summary Judgment [DE-105] is ALLOWED, and Thompson's § 2255 motion [DE-96] is DISMISSED. Thompson's Motion for Discovery [DE-96.1], contained in his § 2255 petition, is DENIED.

Pursuant to Rule 11(a), Rules Governing Section 2254 and 2255 Cases, a certificate of appealability is DENIED. The Clerk of Court is DIRECTED to close this case.

11

SO ORDERED.

This, the ___7th___ day of December, 2009.

                                                *James C. Fox*
                                                JAMES C. FOX
                                                Senior United States District Judge